IN THE COURT OF APPEALS, THIRD DISTRICT OF TEXAS,



AT AUSTIN




 





NO. 3-91-461-CV





CITY OF SAN ANTONIO,



 APPELLANT


vs.





TEXAS ATTORNEY GENERAL, THE HEARST CORPORATION,


AND JULI BRANSON,



 APPELLEES


 




FROM THE DISTRICT COURT OF TRAVIS COUNTY, 167TH JUDICIAL DISTRICT



NO. 474,803, HONORABLE W. JEANNE MEURER, JUDGE PRESIDING



 





 In a declaratory-judgment action, the Attorney General of Texas and two
intervenors, the Hearst Corporation and its employee Juli Branson, recovered summary judgment
against the City of San Antonio. See Uniform Declaratory Judgments Act, Tex. Civ. Prac. &
Rem. Code Ann. §§ 37.001-.011 (West 1986 & Supp. 1992). The judgment declares and enforces
a trial-court decision that certain information kept by the City police department is subject to
compelled disclosure under the Texas Open Records Act. See Tex. Rev. Civ. Stat. Ann. art.
6252-17a (West Supp. 1992) (the "Act"). The City appeals, contending the trial court
misconstrued a statute that exempted the information from compelled disclosure under the Act. 
Concluding the information is not subject to compelled disclosure under the Act, we will reverse
the trial-court judgment and remand the cause to the trial court.



THE CONTROVERSY


 The information in dispute is found in four items that may be included in a police
officer's personnel file maintained by the City police department for its use. The four items are: 
(1) any complaint of misconduct made against the officer; (2) the officer's response to the
complaint; (3) the department's final resolution of the complaint; and (4) a copy of the department
letter advising the complainant of any disciplinary action taken against the officer. In those cases
in which the department takes disciplinary action, it transfers the foregoing documents to the
director of the City civil-service commission. The director may and does release the information
under the terms of the Act. In those cases in which the department does not take disciplinary
action, however, the department retains the foregoing documents in its custody and declines to
disclose them in response to requests made under the Act.

 The City contends the practice of not disclosing the items, when no disciplinary
action is taken against an officer, comes within section 3(a)(1) of the Act, which excepts from
compelled disclosure any documents "deemed confidential" by statute. (1) The central issue on
appeal is whether, as the City claims, the disputed documents are "deemed confidential" by Tex.
Loc. Gov't Code Ann. § 143.089 (West Supp. 1992). If so, then the documents come within
section 3(a)(1) of the Act, and they are not subject to the compelled discovery ordered by the trial
court. We shall therefore examine the terms of section 143.089 of the Code.



THE STATUTE


 The City civil-service commission exercises various powers over personnel
practices within the City fire and police departments. The powers pertain to such things as
physical and other examinations, appointments, certifications, and promotions. See, e.g., Tex.
Loc. Gov't Code Ann. §§ 143.021, .022, .025 (West 1988 & Supp. 1992). The legislature
assigned these various powers to city civil-service commissions in order to achieve efficient fire
and police departments. See Tex. Loc. Gov't Code Ann. §§ 143.001, .003 (West 1988).



Civil-Service Commission Files


 Among the powers of the civil-service commission is that of custodian of police
personnel files for general purposes, which includes compliance with the Act. The power and
duty are assigned in and regulated by subsections (a)-(f) of section 143.089. These subsections
of section 143.089 are mandatory in their terms. They provide that the director of the commission
must maintain a personnel file for each police officer and fire fighter. Moreover, the file must
contain certain specified items: (1) commendatory items; (2) documents relating to any
misconduct in those cases where the fire or police department took disciplinary action against the
individual; and (3) supervisors' periodic evaluations of individual police officers and fire fighters. 
§ 143.089(a)(1-3). When an item (2) document enters an individual's personnel file, the director
must notify the police officer or fire fighter within thirty days; and he or she may respond to the
document within fifteen days. § 143.089(d). The document must be removed from the
individual's file if the commission finds the disciplinary action was taken without just cause or the
charge of misconduct was not supported by sufficient evidence. § 143.089(c). The contents of
an individual's personnel file may not be disclosed without the individual's written consent "unless
the release of the information is required by law"--an evident reference to the disclosure
requirements of the Act. § 143.089(f). As stated above, it is the director's practice to release
from the personnel files he or she maintains any information required to be disclosed under the
Act.

 Subsections (a)-(f) of section 143.089 are important for present purposes because
(1) they mandate the keeping of a personnel file on each police officer or fire fighter; (2) they
designate the director of the civil-service commission as the officer authorized to make disclosure
decisions, under the Act, regarding those files; (3) they declare a legislative policy decision
against disclosure of unsubstantiated claims of misconduct made against police officers and fire
fighters, except with an individual's written consent; and (4) they establish an adjudicatory process
to effectuate that policy decision. These provisions illumine and buttress the legislative intent
reflected in the plain words of subsection (g) of section 143.089.




Departmental Files


 Unlike the mandatory terms of subsections (a)-(f), pertaining to the set of personnel
files maintained by the director of the civil-service commission, the terms of subsection (g) are
permissive. Subsection (g) authorizes but does not require City fire and police departments to
maintain for their use a separate and independent personnel file on a police officer or fire fighter. 
The remaining sentences of subsection (g) regulate the keeping of these files. To accommodate
and preserve the legislative policy decision mentioned above, the director's exclusive power to
make disclosure decisions under the Act, and the adjudicatory process established for making such
decisions, subsection (g) declares: (1) "the department may not release any information contained
in the department file to any agency or person requesting information relating to a fire fighter or
police officer"; instead (2) "[t]he department shall refer to the director [of the civil-service
commission] or the director's designee a person or agency that requests information that is
maintained in the fire fighter's or police officer's personnel file." (emphasis added).

 All parts of section 143.089 are quite obviously designed to work in harmony with
each other and in harmony with the disclosure provisions of the Act under the general legislative
policy that allegations of misconduct made against a police officer shall not be subject to
compelled disclosure under the Act unless they have been substantiated and resulted in disciplinary
action.



DISCUSSION AND HOLDINGS


 The basic facts are undisputed. The police department declined to disclose the
material in the personnel files it maintains and referred the intervenors to the director of the City
civil-service commission. This gave rise to the present lawsuit.

 The basic question of law is, of course, the proper construction of subsection (g)
of section 143.089. Does subsection (g) "deem confidential" the contents of personnel files
authorized by and maintained under subsection (g)? If so, the contents come within subsection
3(a)(1) of the Act and are not subject to compelled disclosure.

 We conclude the plain, simple, and unambiguous terms of subsection (g) permit
only one reasonable construction--the legislature intended to deem confidential the information
maintained by the City police department for its own use under subsection (g). There appears to
be no other reasonable explanation for the explicit prohibition and directive that regulates such
files: "the department may not release" information kept in such a file; and "[t]he department
shall refer to the director" any person requesting information contained in such a file.
§ 143.089(g) (emphasis added). No party suggests in what respect this language is ambiguous;
on its face it is not ambiguous. Our construction comports with the ordinary meaning of the
words employed, and no contrary legislative intent is suggested in any part of subsection (g). See
Massachusetts v. United N. & S.D. Co., 168 S.W.2d 226, 229 (Tex. 1943). We hold
accordingly.

 We shall discuss serially the various arguments raised by appellees in support of
their contrary contention that the disputed documents are subject to compelled disclosure under
the Act.


 The appellees argue the people have a legitimate interest in knowing how a public
officer performs his duties, particularly when these duties involve law enforcement, and it is
essential for public accountability that the disputed information be subject to compelled disclosure
under the Act. The legitimacy of the public interest is not in doubt. The elected representatives
of the people have, however, chosen to effectuate that public interest through the particular
provisions of section 143.089. In our form of constitutional government, the wisdom of the
legislative choice is not subject to judicial review and revision, (2) and we cannot see that the choice
is unconstitutional in any respect. It is sufficient that the legislature decided that compelled
disclosure of the disputed information is not essential.


 The appellees argue the City waived any right it had to rely on the terms of section
143.089 because the City did not urge that contention when it requested an opinion of the attorney
general regarding whether the disputed information was exempt from compelled disclosure by
section 3(a)(1) of the Act. (3) We believe the appellees' argument results from a mistaken
understanding of section 7 of the Act. A request for an opinion, addressed to the attorney general
under section 7, does not give rise to a species of litigation culminating in a decision by that
officer that binds parties in their legal and equitable interests. Section 7 gives no such power to
the attorney general. It makes no provision for such things as pleadings and orders; certainly it
makes no provision for waiver or estoppel. In administering section 7, the attorney general
administers no part of the State's common law and his or her opinions are not enforceable in any
manner except through suit in the courts of the state, as indicated in section 8. (4) Seeking an
attorney general's opinion is not a prerequisite to mandamus relief under the Act--resort to that
officer is merely permissive if the public entity wishes that officer's opinion. Texas Dep't of Pub.
Safety v. Gilbreath, 842 S.W.2d 408, 411 (Tex. App.--Austin 1992, no writ). The attorney
general's opinions under section 7, like the other opinions given by that officer, are purely
ministerial and advisory. See generally, James G. Dickson, Jr., Vital Crucible of the Law: 
Politics and Procedures of the Advisory Opinion Function of the Texas Attorney General, 9 Hous.
L. Rev. 495, 517-523 (1972).

 While a proceeding under section 7 must be basically fair and the governmental
body requesting an opinion must submit "written comments" if it believes it is entitled to withhold
information, these requirements are designed to enable the attorney general to perform his or her
duty under section 7--to arrive at and furnish governmental bodies with the soundest possible
advisory opinions as to the applicability of the compelled-disclosure provisions of the Act. (5) The
doctrines of waiver and estoppel have no place in the proceeding. If the attorney general's
opinions resulted from the application of such equitable doctrines they would not be a guide for
others in complying with the Act; and, by their precluding a careful consideration of the
substantive law, the opinions would lose quickly the respectful consideration they are presently
entitled to receive from the courts of the state.


 The appellees argue that exempting the disputed information from compelled
disclosure might result in the concealment of police-department misdeeds and corruption. Such
concealment is possible, of course, but the argument impermissibly assumes bad faith on the part
of those who administer section 143.089 and those who supervise them--public officers placed in
office directly or indirectly through free elections. Much of what we have said above in this
opinion applies equally to this argument. We are bound to assume the legislature considered and
rejected the possibility raised by appellees. We might add that the same possibility extends to
every exception enumerated in the Act, and the appellees' logic leads ultimately to the result that
none of the stated exceptions to compelled disclosure may be enforced because they might conceal
corruption or misdeeds. We will not pervert in this manner the plain and unambiguous words of
the legislature.

 The appellees contend the disputed information is subject to compelled disclosure
because the disputed records are presently within the physical control of the department's internal-affairs unit. We reject the argument. Under section 143.089 the department is authorized to
maintain the personnel files of subsection (g) "for its use." There is no suggestion in the statute
that such "use" may not include use or physical control by a subsidiary element of the department.

 In support of their claim for an opposite interpretation of section 143.089, the
appellees point to statements made by a few legislators in the course of proceedings by which that
statute was enacted. The appellees have not, however, suggested that we should resort to these
statements because section 143.089 is, in some particular, ambiguous on its face. In any case,
we have examined these statements along with other statements made to the contrary during
legislative hearings. (6) We do not see how legislative intent can be accurately ascertained and fixed
in such circumstances, even if we refer to this kind of "legislative history." The truest guide to
legislative intent is, of course, the plain, simple, and unambiguous language of section 143.089,
which in subsection (g) deems confidential the disputed information. If the legislature did not
intend as much, it chose the poorest possible language to express that intention and the best
possible language to express the contrary intention. Ultimately, however, the language of section
143.089 is unambiguous, and we must and do adhere to it. (7)

 The City initiated the present cause by filing its own suit for declaratory judgment
that the disputed information was not subject to compelled disclosure under the Act. The
appellees filed their respective actions as counterclaims against the City. The trial court dismissed
the City's action for declaratory judgment but preserved its right to defend against the
counterclaims upon which summary judgment was eventually awarded. The City did not appeal
from the order dismissing its action and, from this, the appellees argue they "were entitled to
summary judgment as a matter of law" on their own actions. We are not sure we understand the
appellees' argument in this connection. They did in fact recover summary judgment on their
actions. Apparently they contend we should affirm their judgment because it is merely the
opposite of what the City claimed by its own action to shield the disputed records from compelled
disclosure, an action in which the City's right of appeal was lost. We reject the argument. The
order dismissing the City's action expressly limited its effect to the City's "affirmative claims,"
leaving unaffected its right to defend against the actions brought against it and its right to appeal
from any resulting judgment should that be necessary.

 The appellees contend we must sustain the judgment because the City failed to show
that the police officers, whose personnel files were requested by the intervenors, did not consent
to their disclosure. The appellees base this argument upon section 143.089(f) of the Local
Government Code, which forbids the director of the City civil-service commission from releasing
"any information contained in a . . . police officer's personnel file without first obtaining the
person's written permission." The files maintained by the director are, however, not part of the
present dispute. The dispute pertains only to the personnel files maintained by the City police
department for its use. As discussed at length above, these files are maintained under subsection
(g) of section 143.089 and the statute expressly forbids their release to anyone under any
circumstances. Instead, the statute directs the police department to refer requests to the director
of the civil-service commission for a decision regarding release of the personnel files kept by him
or her.

 For the reasons given, we overrule each of the appellees' arguments.



ATTORNEY'S FEES


 The attorney general and the intervenors have taken a cross appeal from the trial-court judgment insofar as it rejected their claim for attorney's fees under various statutes: the
Uniform Declaratory Judgments Act, Tex. Civ. Prac. & Rem. Code Ann. § 37.009 (West 1986)
(a court may award such "reasonable and necessary attorneys' fees as are equitable and just"); The
Texas Open Records Act, Tex. Rev. Civ. Stat. Ann. art. 6252-17a, § 8(b) (West Supp. 1992) (a
court may assess "reasonable attorney's fees incurred by a [party] who substantially prevails");
and The Texas Open Meetings Act, Tex. Rev. Civ. Stat. Ann. art. 6252-17, § 3 (West Supp.
1992) (a court may assess "reasonable attorney's fees incurred by a [party] who substantially
prevails"). The record does not reveal the reasoning upon which the trial court declined to award
attorney's fees in the cause. 

 We need not decide the appellees' cross appeal. It is sufficient that we must reverse
the summary judgment on the ground raised in the City's appeal.




THE DISSENTING OPINION


 The dissent implies, we believe, three objections to our conclusions: (1) the City's
pleading deficiencies preclude its appellate complaint against the adverse summary judgment; (2)
the City failed to carry its "burden of proof"; and (3) we are simply wrong in the meaning we
have assigned to section 143.089 of the Local Government Code.

 There are no pleading deficiencies: The attorney general and intervenor explicitly
urged in their pleadings and motions for summary judgment that section 143.089 of the Local
Government Code and section 3(a)(1) of the Act did not shield the requested information from
disclosure; the trial court held, in rendering summary judgment, that such was the meaning and
effect of the two statutes. The City's opponents having thus anticipated the City's reliance on the
two statutes, the City had no duty also to place them in issue. See Insurance Co. of N. Am. v.
Cash, 475 S.W.2d 912, 913 (Tex. 1972). In all events, the City's supposed deficiency in failing
to plead the two statutes was waived and the matter tried by consent for want of a pre-judgment
objection. See Roark v. Stallworth Oil & Gas, 813 S.W.2d 492, 495 (Tex. 1991).

 Concerning the contention that the City failed to carry its "burden of proof," we
should emphasize that the facts of the controversy are undisputed. By the motions for summary
judgment, the controversy was made to rest on a question of law: Do the provisions of section
143.089 of the Local Government Code and section 3(a)(1) of the Act shield the requested
information from disclosure? The statutes either have that legal effect or they do not. Each
litigant bore an equal burden--to convince the trial court as to his version of the correct
interpretation of the two statutes. See Johnson v. City of Fort Worth, 774 S.W.2d 653, 656 (Tex.
1989). 

 Concerning the dissent's quarrel with our interpretation of the two statutes, we are
content with what we said above. We should add, however, what the dissent omits to include in
its summary of Tex. Att'y Gen. ORD-562 (1990). After stating section 143.089 does not
diminish the public's right to obtain access to public personnel information but merely provides
a procedural method for obtaining public information, the opinion goes on to add that information
held in personnel files under section 143.089(g), as in the case now before us, is exempt from
disclosure under section 3(a)(1) of the Act to the extent it is reasonably related to the individual's
employment.



CONCLUSION


 In the absence of a trial-court decision on opposing motions for summary judgment,
we may not render judgment on appeal even though we reverse the summary judgment obtained
by the attorney general and the intervenors. See CRA, Inc. v. Bullock, 615 S.W.2d 175, 176
(Tex. 1981). We therefore reverse the trial-court judgment and remand the cause to that court
for proceedings not inconsistent with our opinion.



 

 John Powers, Justice

[Before Justices Powers, Aboussie and B. A. Smith]

Reversed and Remanded

Filed: April 7, 1993

[Publish]
1.   Under the Act, "information deemed confidential by law, either Constitutional,
statutory, or by judicial decision" is exempted from disclosure. Tex. Rev. Civ. Stat. Ann.
art. 6252-17a, § 3(a)(1) (West Supp. 1992).
2.   "The wisdom of courts--however impeccably conceived--may not be, even in our system
of blended law and equity, substituted for the plainly expressed intention of the Legislature." 
In re Dulin's Estate, 244 S.W.2d 242, 244 (Tex. Civ. App.--Galveston 1951, no writ).
3.   In a proceeding authorized by section 7 of the Act, the attorney general determined the
disputed information was subject to compelled disclosure under the Act. See Tex. Att'y Gen.
ORD-354 (1989).
4.   Section 8(a) provides: "If a governmental body refuses . . . to supply . . . information
which the attorney general has determined to be a public record, the person requesting the
information or the attorney general may seek a writ of mandamus compelling the
governmental body to make the information available for public inspection."
5.   Section 7(b) of the Act states that the attorney general's opinion shall be "consistent
with standards of due process" and that a governmental agency wishing to withhold
information "must submit written comments setting forth the reasons why the information
should be withheld."
6.   Compare Hearings on Tex. H.B. 1368 Before the Senate Intergovernmental Relations
Comm., 70th Leg., R.S. (May 26, 1987) (testimony of Ron DeLord, president of Combined Law
Enforcement Associations of Texas (CLEAT)) ("[The bill] does not stop the Police Department
from having 50 files if they wish, but there should be one file that is the official file . . . for use
at civil service hearings or for public information.") with Hearing on H.B. 1368 Before the House
Urban Affairs Comm., 70th Leg. R.S. (Apr. 6, 1987) (testimony of Rep. Orlando Garcia) ("[T]his
bill neither decreases of expands whatever present law says about an open record in the file.").
7.   This Court is responsible for "giving a true and fair interpretation of the enactment as
it is written, which means an interpretation that is not exaggerated, forced, or strained but one the
ordinary meaning of the words of the enactment will fairly sanction and clearly sustain." 
Comm'rs Court v. Criminal Dist. Attorney, 690 S.W.2d 932, 936 (Tex. App.--Austin 1985, writ
ref'd n.r.e.) (emphasis added).